OPP
JEROME R. BOWEN, ESQ.
Nevada Bar No. 4540
SARAH M. BANDA, ESQ.
Nevada Bar No. 11909
**BOWEN LAW OFFICES**
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
Office: (702) 240-5191
Facsimile: (702) 240-5797
*ATTORNEYS FOR PLAINTIFFS*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

STEPHEN TANNER HANSEN, individually; CLARK LEFEVRE, individually, and as parent of CRAIG LEFEVRE,

      Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, a foreign corporation; CR CHANDLER; DOES 1 through 10; and ROE CORPORATIONS 1-10.

      Defendants.

Case No.  2:11-cv-01519-GMN-CWH

**PLAINTIFFS' OPPOSITION TO DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

*(sidebar)*
**BOWEN LAW OFFICES**
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................iii

INTRODUCTION.................................................................... 4

SALIENT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Applicable Law: Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    LIBERTY MUTUAL Has Waived Any Right to Assert Any Denial of Coverage in this Case, Including any Allegedly Applicable Policy Provision and/or Exclusions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    The Court Should Deny the Defendant's Motion As the Policy Language Supports A Finding In Favor of Plaintiffs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        1.    Jeff Hart's conduct constituted an "occurrence" under the applicable policy language. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        2.    The Negligence Claim is Proper As Jeff Hart's Conduct is Covered Under the Applicable Homeowner's Policy. . . . . . . . . . . . . . . . . . . . . . . . . 23

        3.    Defendant's Argument That Because There Was No Coverage As a Matter Of Law As to The 2nd Amended Complaint, There Can Be No Bad Faith, Is Without Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        4.    Plaintiffs' Claims for Violation of the Nevada Unfair Claims Practices Act is Not Barred by the Statute of Limitations. . . . . . . . . . . . . . . . . . . . 24

        5.    Plaintiffs Can Demonstrate that Liberty Mutual Was Guilty of Oppression, Fraud, Or Malice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**BOWEN LAW OFFICES**
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191   FAX: 702-240-5797

Come now the Plaintiffs, STEPHEN TANNER HANSEN and CLARK LEFEVRE (herein after "PLAINTIFFS"), by and through their attorney of record, JEROME R. BOWEN, Esq., of BOWEN LAW OFFICES, and oppose Defendant Liberty Mutual Firm Insurance Company's Motion for Summary Judgment.

In summary, this matter stems from an incident on July 18, 2003, in which Stephen "Tanner" Hansen suffered serious and life-long injuries. At that time, BRETT HART, CHRISTINA HART, RITA HART, and JEFF HART (collectively referred to as the "HARTS") were "insureds" under a valid and effective homeowners policy from Defendant Liberty Mutual Fire Insurance Company ("LIBERTY MUTUAL"), which insurance coverage was purchased from broker/producer, Defendant CHANDLER. This is a matter that should have been settled years ago, when Defendant LIBERTY MUTUAL should have protected its insured (i.e. the HARTS) over its own interests and profits. This was a case of "bodily injury," which was the only category of injury covered under the insurance policy at issue in the underlying motion.

Instead of providing a defense for its insureds and/or settling the case for policy limits under the applicable insurance policy based upon the negligence claims asserted and the severe bodily injury suffered by the Plaintiffs, Defendant LIBERTY MUTUAL chose not to provide a defense to its insureds and/or settle, and chose not to protect its insured from liability for numerous other offenses (i.e. assault, battery, false imprisonment, conspiracy, concert of action, and RICO, for example) instead of simply paying for the bodily injuries due to the negligence of its insureds and which is covered by the policy for protection of its insured.

Rather, Defendant ignored its duty to fully/properly defend and/or fully/properly indemnify, exposing its insureds, the HARTS, to millions of dollars in personal liability, and forcing the HARTS to defend and/or protect themselves as best they could by participating in the litigation as long as possible and finally be forced to enter into a Settlement Agreement, stipulate to a Judgment,

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

and assign their rights to the Plaintiffs in order to avoid potential financial ruin.

The record shows that LIBERTY MUTUAL would not simply even provide a defense to its insureds, although negligence was alleged in the complaints against the Harts. Further, the record is clear that the insurer would not agree to settle regarding Plaintiffs' policy limits or less demands. Hence, the HARTS were forced to enter into the Settlement Agreement, Stipulated Judgment, and Assignment, which gave the authority to Hansen and LeFevre to pursue bad faith claims against LIBERTY MUTUAL, for example. It should be noted, that the Liberty Claim Diary (Defendant's Exhibit 8), Barry Moyer's letter to the Harts (Exhibit 9) and the "certified" policy, as contained as Exhibit 5 to the underlying Motion will require important discovery as to why, for example, a defense was not given to the insureds by the insurer when "negligence" claims were alleged as associated with the Harts, for example. Said production provides further support that the underlying Motion is premature at best given the plethora of discovery that remains in this case. Discovery is tentatively scheduled to close in July of 2012.

In reality, the only way the allegedly applicable insurance policy exclusion will apply is if:

1.      the bodily was intended (i.e., "intent to cause a loss") by "the insured;"

2.      the loss was "by or at the discretion of the insured.

Simply put, according to the deposition of Jeff Hart, Brett Hart and Tony Cikity, Jeff Hart did not throw any object at the vehicle. Neither is there any evidence that the loss suffered by the Plaintiffs on the fateful night arose out of an act committed by or at the discretion of Jeff Hart and/or Brett/Rita Hart, with the intent to cause a loss. The evidence, in fact, supports that the Harts were simply negligent with respect to their actions, which negligence is covered by the policy at issue. At the very least, given the evidence in the underlying 311 Case as well as the pleading of negligence with respect to the Harts, a defense should have been provided by Liberty Mutual. Simply, assuming

Page 1 of 28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191   FAX: 702-240-5797

arguendo that the Court feels that the Motion is ripe for adjudication at this juncture, which the Plaintiffs dispute, the Defendant has provided no evidence that the "intentional acts" exclusion was clearly applicable here and/or there was no defense required under applicable law. The undisputed, uncontested facts of this case do not justify an order granting Defendant's Motion for Summary Judgment. For example,

- Jeff Hart's conduct was negligent, not willful and malicious.

- The "rock throwing" was merely one part in the chain of events leading to Plaintiffs' injuries. Jeff Hart arrived at the party, was a part of and associated with the 311 Boyz at the party, and was present at the events at the home, which led to the Plaintiffs fleeing the party in the LeFevre vehicle.

   At no time during the events leading up to the Plaintiffs' horrific injuries did Jeff Hart attempt to extricate himself from the group and thus was negligent.

- Various members of the 311 Boyz testified that they did not intent to hurt and/or kill the Plaintiffs, but were trying to stop the LeFevre vehicle because they thought that Plaintiffs had committed a crime when they allegedly hit T.J.Carter, another 311 Boy and a parked vehicle, while attempting to flee the residence.[1]

However, the Defendant seems to overlook all of the precursor actions, constituting the occurrence that resulted in the bodily injuries for which damages are sought in this matter, and instead improperly attempts to focus the Court's attention on the "rock throwing" only, which played one role in the entire chain of events and occurrences that evening.

Under F.R.C.P. 56(f) and N.R.C.P. 56(f), the Court has authority to give the party opposing a motion for summary judgment a continuance when discovery is not complete and additional evidence is needed. **Indeed, it has been held that it is an abuse of discretion to deny a request for a continuance** to conduct additional discovery in order to compile facts in opposition to a

---

[1] See Exhibit 1 attached to Declaration of Jerome R. Bowen, Esq. - deposition transcript of Christopher Farley.

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

1   motion for summary judgment.  Halimi v. Blacketor, 105 Nev. 105, 770 P.2d 531 (1989).

2        Therefore, this Opposition is made and based upon all the files, records and pleadings on file

3   herein, together with the exhibits attached hereto, the Declaration of Jerome R. Bowen, Esq. filed

4   concurrently herewith, the Request for Judicial Notice filed concurrently herewith, and any oral

5   argument to be heard at the time of the hearing of this matter.

6

7        DATED this 22nd day of February, 2012.

8                                          BOWEN LAW OFFICES

9

10                                         Jerome R. Bowen, Esq.
                                           Nevada Bar No. 004540
11                                         Sarah M. Branda, Esq.
                                           Nevada Bar No. 011909
12                                         BOWEN LAW OFFICES
                                           Attorneys for Plaintiffs
13

14                                              I.

15                                        INTRODUCTION

16        On July 18, 2003, Tanner Hansen, Craig LeFevre and Joe Grill  were at a home in the

17   Summerlin area of Las Vegas. Feeling uncomfortable in the midst of others while in the backyard

18   of said property, Tanner, Craig and Joe desired to leave. When the three tried to leave in Craig's

19   dad's white pickup truck, they were prevented from doing so by individuals sitting on and/or

20   standing behind the vehicle.  Said individuals were part of a group known as the "311 Boyz," of

21   which Jeff Hart was an admitted member.[2]   Others were also present in the large group of young

22   people that evening.  Jeff was at the party that night and was a part of the group in the backyard and

23

24

25  _____

26   [2] In the Deposition of Christopher Farley, taken September 9, 2005, Mr. Farley testified that Jeff Hart is a
     member of the "311 Boyz" along with numerous other individual. See Exhibit 1 attached to Declaration of
27   Jerome R. Bowen, Esq. at 154:7-25.

28                                        Page 3 of  28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

those that surrounded the LeFevre vehicle. Craig was then hit several times about the face and/or upper torso area by Matt Costello, a fellow "311 Boyz" member. Fearing for their lives, Craig backed up and sped out of the cul-de-sac which held a large crowd of partygoers. When the vehicle backed up, it mistakenly hit another jeep, owned by Bonnie Smith, parked in the cul-de-sac.

The LeFevre vehicle was hit numerous times with various things, including but not limited to, bottles, fists, and/or feet, thrown by the "311 Boyz" crowd and others, which included Jeff Hart. On the way out of the cul-d-sac, the LeFevre vehicle was also alleged to have struck a boy which was also a part of the 311 Boyz. At the exit gate, the LeFevre truck was negligently bumped from behind by the Aguilar jeep, driven by Brad Aguilar. Craig then drove through the remaining unopened gate turning right onto Eastbound Canyon Run in the direction of their homes.

Eyewitnesses testified in the above-referenced lawsuit that the LeFevre vehicle was being followed by the Aguilar vehicle as well as other autos from the crowd of partygoers. Aguilar testified that he turned around and went back into the community to obtain another passenger to take home. Nevertheless, as the LeFevre white Tacoma truck approached the area of the Canyon Terrace development adjacent to the fenced cul-de-sac and 9201 Canyon Mesa area, it was hit with numerous rocks and beer bottles/cans. The objects smashed windows on the truck, including the front windshield and dented the vehicle in numerous places. Shattered glass was sent flying through the cabin causing various cuts and abrasions to Craig, Tanner and Joe. One of the rocks came through the windshield striking the left arm of Tanner, his face and forehead area, which caused severe and permanent damage to Tanner.

The LeFevre vehicle continued through various streets in the Northwest area of Las Vegas until just before it arrived at Mountain View Hospital located on North Tenaya. Later

Page 4 of  28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

at the hospital, the families of the victims which included Plaintiff Clark LeFevre, received threats regarding their homes and safety from member of the "311 Boyz." As a result of the events, Tanner has had multiple surgeries, and is in need of future medical treatment and/or surgeries.

At the time of the aforementioned events in July of 2003, Defendants, the HARTS, were "insureds" under a valid and effective homeowners policy from Defendant LIBERTY MUTUAL, which insurance coverage was purchased from broker/producer, Defendant CHANDLER. At the time of the purchase of the policy at issue and/or throughout the policy periods, the HARTS were consistently told by Defendant LIBERTY MUTUAL and/or Defendant CHANDLER that the Liberty Mutual policy would protect them in the event of a claim, that their claims would be covered, and that if they were sued that LIBERTY MUTUAL would fully defend and protect them and/or not fail to take proper action which would include paying the limits of the policy to an injured party(s), for example, if necessary to avoid any exposure to personal liability.

Based upon these representations and others given by Defendant CHANDLER, the HARTS put their trust and reliance in CHANDLER and/or LIBERTY MUTUAL and purchased the LIBERTY MUTUAL insurance for their property and themselves, repeatedly renewing the same year after year and faithfully paying the insurance premiums.  As there has been virtually no discovery undertaken to date in the underlying case, there are many issues remaining, such as whether or not CHANDLER is a captive agent of LIBERTY or whether or not she is a broker and able to sell various types of insurance from various insurers; whether or not she carried her own "errors and omissions insurance" to cover her own liability; whether or not she was credentialed as a "CPCU" or a chartered property and casualty underwriter, for example.  In other words, did she have the ability to sell other lines of insurance from other carriers and/or offer the same to the Harts, for

Page 5 of 28

example.  If she was a CPCU at the time of the representations, certain Rules and/or policies and procedures as to her conduct would apply.  Further, issues remain as to why their was no defense provided by the insurer when they provided a defense for Jeff Hart in at least one other known matter stemming from that same Summer of 2003 associated with the 311 Boyz pertaining to Sean Quinn. All of these issues, for example, when taken with the underlying circumstances and/or statements made or given to the Harts at the time of the policy(s) purchases and/or thereafter, are highly relevant to a determination of individual liability by CHANDLER, and the liability or bad faith of the insurer.

After the above-referenced incident of July 18, 2003, litigation entitled <u>Hansen v. 311 Boyz, et al.</u>, Case No. A497445, ensued in Clark County Nevada, the promises and/or representations made by CHANDLER and/or LIBERTY MUTUAL were not kept after the claim was submitted by the HARTS to CHANDLER and LIBERTY MUTUAL.  For example, CHANDLER and/or LIBERTY MUTUAL failed to properly evaluate the personal injury and/or property claims asserted against the insured HARTS.

Further, LIBERTY MUTUAL and/or CHANDLER failed to fully and/or properly advise the HARTS of the all of the insurance circumstances they were facing in conjunction with the litigation, timely advise them of potential personal liability exposure and/or limitations of the policy(s) of insurance for the underlying claims,  ensure the complete defense of the HARTS in the above-referenced litigation, timely and properly respond to the policy limits demands made on behalf of the Plaintiffs in the above-referenced suit, and/or timely settle the case and/or the personal injury and/or property claims for at least the LIBERTY MUTUAL policy limits as demanded by Plaintiffs HANSEN and LEFEVRE and/or their counsel, for example.   In other words, no defense was provided at all to the HARTS.  They were left to fend for themselves by LIBERTY, although

Page 6 of  28

reportedly it defended the HARTS and gave indemnification related to another incident purportedly involving Jeff Hart and the 311 Boyz which occurred at or about the same time as the underlying incident(s) in July of 2003.

On December 22, 2009, the Court in the A497445 case ordered the appointment of the clerk of the court as an Elisor to sign the judgments on behalf of Rita Hart and Brett Hart. The Elisor signed a stipulation for entry of judgment against the Harts in the amount of three hundred fifty thousand dollars ($350,000.00).   Facing a probably Judgment which would be financially devastating (i.e, approximately NINE MILLION DOLLARS ($9,000,000.00) as cited herein) to the HARTS and having been provided no defense whatsoever by their insurance company LIBERTY MUTUAL or Defendant CHANDLER, on or about September 23, 2008, the HART insureds, agreed to Stipulated Judgment.

Under the circumstances, said persons were forced to take action to protect themselves as best they could.   The HARTS entered into a Settlement Agreement with PLAINTIFFS HANSEN and LEFEVRE, requiring, in part, that they assign any and all of their assignable claims against LIBERTY MUTUAL and/or their insurers and agents/brokers, to the Plaintiffs herein and that they would fully cooperate in any ensuing litigation concerning the coverage afforded by the Liberty Mutual policy, for example.  All of the rights, title and/or interest of the HARTS in the LIBERTY MUTUAL policies and/or insurance policies and/or proceeds to the same have been assigned to HANSEN and LEFEVRE, who are now forced to pursue LIBERTY MUTUAL and CHANDLER to recover proceeds and/or monies, for example, due and owing under said policies of insurance in an amount at least equal to the Judgments, as well as any punitive damages, for example.

The Complaint was filed December 22, 2010, in Department XXII of the Eighth Judicial

Page 7 of  28

District Court, in and for Clark County, Case Number A628361.[3]  Discovery is set to close in July of 2012.

## II.

### SALIENT FACTS

On the date of the underlying incident, the Harts were insureds under a homeowners policy with Defendant LIBERTY MUTUAL.[4]  The relevant Homeowner's policy language is as follows:

### DEFINITIONS

3.   "Insured" means you and residents of your household who are:
   a.   Your relatives; or
   b.   Other persons under the age fo 21 and in the care of any person named above.
5.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a.   "Bodily injury"; or
   b.   "Property damage."

### SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claims is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1.   Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded againts the "insured"; and
2.   Provide a defense at our expense by counsel of our choice…

### SECTION II - EXCLUSIONS

1.   Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not

---

[3] See Exhibit 3 of Defendants' Motion for Summary Judgment.

[4] See Exhibit 5 of Defendants' Motion for Summary Judgment.

Page 8 of  28

**BOWEN LAW OFFICES**
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

apply to "bodily injury" or "property damage":

a.      Which is expected or intended by the "insured"…

(See also, Section I -Exclusions, regarding Intentional Loss), Exhibit 5 to Motion.

SECTION II - CONDITIONS

2.     **Severability of Insurance**. This insurance applies separately to each "insured"…

Id.

On July 18, 2003 the aforementioned events transpired, leading the Harts to make an insurance claim. At no time was even a defense provided by the Defendant insurer to the Harts.

After the above-referenced incident of July 18, 2003, litigation entitled Hansen v. 311 Boyz, et al., Case No. A497445, ensued in Clark County Nevada. On April 12, 2006, LIBERTY MUTUAL issued a letter to both Brett and Rita Hart, stating that it was unable to provide coverage and/or a defense based upon insurance policy provisions and/or exclusions.[5] After a denial of coverage, the Harts entered into settlement negotiations, including an assignment of rights for bad faith against LIBERTY MUTUAL, with the Plaintiffs in order to avoid personal liability for the events of July 18, 2003 and/or financial ruin.

III.
ARGUMENT

LIBERTY MUTUAL distorts the facts and case law to fit into the mold necessary to justify its wrongful denial of coverage. First and foremost, this is a matter that should have provided a defense to its insured, the Harts, at a minimum and settled years ago for the applicable homeowner's

---

[5] See Exhibit 9 of Defendant's Motion for Summary Judgment.

Page 9 of 28

**BOWEN LAW OFFICES**
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

**BOWEN LAW OFFICES**
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

1  policy limits when Defendant LIBERTY MUTUAL should have protected its insured over its own

2  interests and profits. This was a case of bodily injury based upon the evidence of Negligence

3  associated with the Harts, at a minimum, which injury was and is covered under the applicable

4  insurance policy. Instead of defending and/or settling the case for policy limits based upon the severe

5  bodily injury suffered by the Plaintiffs, Defendant LIBERTY MUTUAL chose not to defend and/or

6  indemnify (i.e., settle), and chose not to protect its insured from liability for numerous other,

7  potentially uninsured offenses (i.e. assault, battery, false imprisonment, conspiracy, and RICO, for

8  example) instead of simply paying for the bodily injuries from the negligence and protecting its

9  insured. Rather, Defendant LIBERTY MUTUAL ignored its duty to fully defend and/or fully

10  indemnify, exposing the Harts to personal liability, and forcing the Harts to assign their rights to the

11  Plaintiffs in order to avoid financial ruin.

12  The instant case arose from the events of July 18, 2003 between the Plaintiffs and the 311

13  Boyz, including 311 Boyz member Jeff Hart, which led to the Plaintiffs' severe and permanent

14  injuries and the outright refusal of LIBERTY MUTUAL to honor its contractual commitments. The

15  Assignment was merely an after-the-fact legal necessity to enable the injured party to obtain a

16  recovery from the insurer, who would otherwise walk away from its coverage obligation given the

17  Harts lack of financial resources to challenge the coverage positions taken by LIBERTY MUTUAL,

18  something LIBERTY MUTUAL was aware of and counting on. LIBERTY MUTUAL was aware

19  that the Harts insureds had no resources to litigate coverage and/or protect themselves from personal

20  liability and/or financial ruin.

**A.     Applicable Law: Summary Judgment Standard**

Summary judgment is a drastic remedy, and the Nevada Supreme Court has many times

cautioned the trial courts to exercise great care in granting motions for summary judgment. The United States District Court, for the District of Nevada has held that "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Dinella v. Friedmutter Group, 2007 WL 956899, *1 (D.Nev.). "The moving party bears the initial burden of demonstrating the absence fo a genuine issue of material fact." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material." Id. "If the moving party meets its initial burden, the 'adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial.'" Id. (citing F.R.C.P 56(e). "In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. See Dinella at *1 (citing Anderson at 255).

"Summary judgment is not treated as 'a disfavored procedural shortcut,' but as 'an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" See Dinella at *1. Under our facts in this case, the exhibits attached hereto and those in the underlying Motion, the Plaintiffs can and will likely be able to show and/or lead a rational trier of fact to find for the Plaintiffs on all causes of action against Defendant STATE FARM FIRE.

Under F.R.C.P. 56(f) and N.R.C.P. 56(f), the Court has authority to give the party opposing a motion for summary judgment a continuance when discovery is not complete and additional

Page 11 of 28

evidence is needed.  Indeed, it has been held that **it is an abuse of discretion to deny a request for a continuance** to conduct additional discovery in order to compile facts in opposition to a motion for summary judgment.  Halimi v. Blacketor, 105 Nev. 105, 770 P.2d 531 (1989).

**B.    LIBERTY MUTUAL Has Waived Any Right to Assert Any Denial of Coverage in this Case, Including any Allegedly Applicable Policy Provision and/or Exclusions.**

LIBERTY MUTUAL has waived any right to assert any affirmative defenses regarding denial of coverage for the Harts, and Plaintiffs via assignment, in this matter. The Court in NGA #2 Limited Liability Co. v. Rains, 113 Nev. 1151, 946 P.2d 163 (1997), applied the doctrine of "waiver" to the circumstances therein. In NGA, the primary issue was the silence of a party (i.e., "Rains") after a deadline passed under a contract with NGA. Id. Rains continued to act as if the contract had not been breached until he later attempted to cancel escrow later on NGA.  Although the NGA Court did not directly define the elements of "waiver" under Nevada law, its citation of language from the case of Kosinski v. Gallt, 58 Misc.2d 124, 294 N.Y.S.2d 602, 605 (1968) is perhaps telling that **a "waiver" of a condition to a contract may be effected through inconsistent direct or indirect actions by the party, evidencing abandonment, prior to seeking to enforce the condition**:

> The performance of the condition of an escrow may be waived.  The weight of authority overwhelmingly supports the proposition that the breach of a condition of delivery of an escrow can be ratified directly or indirectly by the escrow depositor.

Id. (emphasis added).

In NGA, the Court held that both parties took steps toward closing the transaction after the ninety-day grace period had expired.  Further, the Court found that Rains had cancelled the contract at approximately the time allotted under the contract for all four extensions of the closing date.  Thus, the Court concluded that there was a genuine issue of material fact regarding "whether Rains

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

abandoned the escrow agreement and waived strict compliance with its terms" sufficient to preclude summary judgment. NGA 113 Nev. at 1163.

In Nevada, waiver is an "intentional relinquishment of a known right." See Thompson v. City of N. Las Vegas, 108 Nev. 435, 833 P.2d 1132 (1992). To be valid or effective, "a waiver must occur with full knowledge of all material facts." Id. Such is the case herein. LIBERTY MUTUAL has been engaged in the "311 Boyz" litigation for years prior to the Hart settlement and assignment occurring in the case associated with the Plaintiffs herein.

Further, it had continuously represented there was no coverage for the Harts under LIBERTY MUTUAL policy and thus provided no defense.  Yet, it paid insurance policy amounts on another, separate incident involving the "311 Boyz" and/or Jeff Hart during the summer of 2003 according to counsel on that case, Eric Daley, Esq.

Under California law, waiver is a question of fact. See Intel Corp. V. Hartford Accident & Indemnity Co., 952 F.2d 1551 (1991).  Further, California courts will "find a waiver when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished. " See Rheem Mfg. Co. v. United States, 57 Cal.2d 621, 21 Cal.Rptr. 802, 371 P.2d 578, 581 (1962).

Importantly, the doctrine of waiver looks to "the act, or the consequences of the act, of one side only," in contrast to the doctrine of estoppel, which "is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." 30 Cal.Jur.3d Estoppel and Waiver 2 (1987), cited by Intel, 952 F.2d at 1559. **In cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured."**   Id. Both were present in our facts and

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

Page 13 of  28

circumstances herein.

As an example of "waiver,"[6] the Ninth Circuit Court of Appeals in <u>Intel</u>, cited the facts of <u>Miller v. Elite Ins. Co.</u>, 100 Cal. App. 3d 739, 161 Cal. Rptr. 322 (1980), wherein, the court held that the insurer had waived its right to deny coverage for damages caused by an accident in which the insured was involved.  The court in <u>Miller</u> found that, "by its conduct in proceeding to deal with [the other party's insurer] as though [the insurer] intended to represent and defend [the insured], created the impression that there was no coverage dispute." <u>Miller</u>, 161 Cal. Rptr. at 328.  "**Moreover, the insurer never informed the insured that it intended to reserve its rights to assert non-coverage.**" <u>Intel</u>, 952 F.2d at 1559, <u>referencing Miller</u>, 161 Cal.Rptr. at 328; <u>see also</u> <u>Dalzell v. Northwestern Mut. Ins. Co.</u>, 218 Cal. App.2d 96, 32 Cal. Rptr. 125, 128 (1963) (insurer waived requirement that insured forward summons to it where insurer knew suit had been filed against insured and told insured "everything would be taken care of").

Although the <u>Intel</u> Court affirmed the granting of summary judgment, the Court looked at whether the insurer attempted to "sandbag" or mislead Intel with the belated announcement of a new grounds for denial of coverage. <u>Intel</u>, 952 F.2d at 1561.  The Court also looked at whether Intel was prejudiced by the conduct of the insurer.  <u>Id</u>.

Whether the Court looks to "the act[s], or the consequences of the act[s], of [LIBERTY MUTUAL] only," (i.e. "Waiver" analysis), or whether the "conduct of [LIBERTY MUTUAL] has induced  [the Harts] to take such a position that it would be injured if the first should be permitted to repudiate its acts," (i.e., "Estoppel" analysis),  is largely irrelevant for our purposes hereunder as

---

[6]<u>See also</u> <u>West v. Haralambos Beverage Co.</u>, 195 Cal. App.3d 1308, 241 Cal. Rptr. 427 (1987) (elements of "prejudice or detrimental reliance . . . are essential to waiver and estoppel").

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191   FAX: 702-240-5797

1   both apply to our factual circumstances.  See 30 Cal.Jur.3d Estoppel and Waiver 2 (1987), cited by

2   Intel, 952 F.2d at 1559.   "Indeed, courts often use the two terms [waiver and estoppel]

3   interchangeably."  Id.

4       In viewing the issue of "waiver," the focus is upon LIBERTY MUTUAL's conduct only, not

5

6   that of the Harts.  Id.  According to information obtained from counsel Eric Daley, Esq., LIBERTY

7   MUTUAL both provided a defense and paid under its policy of insurance in one instance involving

8   the "311 Boyz" and/or Jeff Hart (i.e., Sean Quinn matter), yet denied coverage in the instant case.

9   See Declaration of Jerome R. Bowen attached hereto.  Plaintiffs have attempted to obtain the file

10  associated with said matter from both Mr. Daley and defense appointed counsel, but both have

11  objected.  Thus, a motion to compel will be forthcoming to this court regarding the same.

12

13      Moreover, from the facts stated herein, it could not be clearer that LIBERTY MUTUAL

14  relinquished any right to deny coverage under the Liberty Mutual Homeowner's policy.  Even if

15  LIBERTY MUTUAL had grounds and/or a right to deny coverage, which Plaintiffs submit they do

16  not, **that right was waived when LIBERTY MUTUAL tendered policy amounts on another**

17  **"311 Boyz" incident involving Jeff Hart during the summer of 2003.**  LIBERTY MUTUAL

18  cannot claim an "intentional acts exclusion" in one scenario yet pay policy limits in another.

19

20      Such facts unquestionably fulfill the requirements for application of the "waiver" doctrine

21  as set forth above herein. LIBERTY MUTUAL has either intentionally relinquished any right to deny

22  coverage under the Homeowner's policy and/or acted in a manner totally inconsistent with the intent

23  of asserting defenses to coverage. At a minimum, there is a genuine issue of material fact whether

24  Defendant LIBERTY MUTUAL has waived the right to contest coverage under the insurance policy.

25

26  C.   **The Court Should Deny the Defendant's Motion As the Policy Language Supports A**
     **Finding In Favor of Plaintiffs.**

27

28                               Page 15 of  28

1

**1.** **Jeff Hart's conduct constituted an "occurrence" under the applicable policy language.**

2

3 There is no evidence that Jeff Hart's conduct was anything but negligent, i.e., it was not

4 intentional, willful, and/or malicious. Negligence occurs when (1) Defendant owed a duty of care

5 to plaintiff; (2) Defendant breached that duty; (3) the breach was the legal cause of plaintiff's

6 injuries; and (4) Plaintiff suffered damages. See Scialabba v. Brandise Construction Co., 112 Nev.

7 965, 921 P.2d 928 (1996); see also Brummett v. Teske 344 Fed.Appx. 373, 374 (C.A.9 2009).

8

9 The Nevada Supreme Court has made it clear through a long-line of decisions culminating

10 up to the present that "proximate cause is any cause which in natural and continuous sequence,

11 unbroken by any efficient intervening cause, produces the injury complained of and without which

12 the result would not have occurred." See Williams v. State, 118 Nev. 536, 50 P.3d 116 (2002); see

13 also Wood v. Safeway, 121 Nev. 724, 121 P.3d 1026 (2005)

14 More specifically, in Williams, the Nevada Supreme Court held that the following was "an

15

16 accurate statement of Nevada law":

17 "Proximate cause" is that cause which is natural and a continuous sequence, unbroken by any other intervening causes, that produces the injury and without which the injury would not have occurred.

18

19 A proximate cause of an injury can be said to be that which necessarily sets in operation the factors that accomplish the injury.

20

21 The contributory negligence of another does not exonerate the defendant unless the other's negligence was the sole cause of injury. Williams 118 Nev. 536, 550.

22 The Court in Williams also confirmed that "an intervening cause must be a 'superseding

23 cause' or the 'sole cause' in order to completely excuse the prior act." Id. In citing the California

24 Court of Appeals decision of People v. Autry, 37 Cal. App.4th 351, 43 Cal. Rptr.2d 135, 137 (1995),

25 the Nevada Supreme Court in Williams confirmed "that 'in the normal meaning of the words . . . an

26 'intervening' or 'superseding' cause which relieves the criminal actor of responsibility is one which

27

28 Page 16 of 28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191 FAX: 702-240-5797

'breaks the chain of causation' *after* the defendant's *original* act.'" Defendants' conduct will surely be shown to be a direct and proximate cause of the injuries suffered by the Plaintiffs.

While liability for the events at issues attaches to the Harts vicariously, for the reasons discussed herein, facts cited by LIBERTY MUTUAL show an occurrence (i.e. accident) in relation to the conduct of Jeff Hart and no intent to injure.

Moreover, a **determination of whether injury resulted from an accident, notwithstanding intentional nature of insured's act, is dependent upon whether consequences of insured's intentional act either were intended by insured or reasonably should have been expected because of direct risk of harm intentionally created by insured's actions.** See Nabozny v. Burkhardt, 461 Mich. 471, 606 N.W.2d 639 (2000)(emphasis added). Nabozny determines that even though a Defendant "engaged in intentional conduct when he initiated the fight with plaintiff, the evidence contradicts a finding that he intended to harm the plaintiff, or even that harm to plaintiff was anticipated or naturally expected as a result of his conduct." Id. at 475, 606 N.W.2d at 641.

Defendant cites Beckwith v. State Farm Fire and Cas. Co, 120 Nev. 23, 83 P.3d 275 (2004) and Fire Ins. Exchange v. Cornell, 120 Nev. 303, 90 P.3d 978 (2004) in "support" of its position as to intentional acts. First and foremost, Defendant incorrectly summarize the aforementioned case law, skewing said law in its favor. Nowhere in Beckwith does the Court state that "the act itself determines coverage" when discussing intended acts and/or intended consequences. Rather, Beckwith involves an individual who ingested LSD, alcohol, and marijuana and subsequently struck another individual in the face, *admitting that he intended to strike the other individual in the face.* Id.(emphasis added) Similarly, in Cornell, a nineteen year old intentionally engaged in sexual intercourse with a twelve year old neighbor. In Mallin v. Farmers Insurance Exchange, 108 Nev.

**BOWEN LAW OFFICES**
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

788, 839 P.2d 105 (1992), **"the court observed that 'intent' or 'intention' denotes a design or desire to cause the consequences of one's acts and a belief that given consequences are substantially certain to result from the acts."** Id. at 791, 839 P.2d at 107. There is no such evidence present or existing herein. Again, all of the evidence points to the fact that Jeff Hart and others stated that their actions and/or the injuries were negligent and/or unintended to the Plaintiffs.

Further, a "willful and malicious" injury is defined as "(1) 'a wrongful act,' (2) 'done intentionally,' (3) which 'necessarily produces harm', and (4) is done 'without just cause or excuse.'" See In re McCurdy, 230 F.3d 1367(C.A.9 2000). For the exclusion from the policy to apply, thre must be 1) a loss by or at the direction of an "insured"; and 2) [done] "with the intent to cause a loss." P. 8 of Policy, Exhibit 5 to Motion.

The instant case is distinct from Beckwith, Cornell, or Mallins. First, unlike in Beckwith or Mallins, 311 Boyz members, such as Christopher Farley, testified that they did not intend to strike the Plaintiffs whereas the individuals in Beckwith and Mallins intended to engage in the conduct at issue in those cases (i.e. striking someone in the face and/or shooting someone). Second, from the standpoint of Jeff Hart and Brett Hart the entirety of the events of July 18, 2003, from start to finish, were accidents. The deposition testimony Jeff Hart does not support Defendant's allegation that the injury was intentional.[7] Specifically, Jeff Hart plead the fifth to almost each and every question asked in the underlying case and his testimony does not establish any intent to cause the injuries suffered by the Plaintiffs.[8] Further, the testimony of Brett Hart and Tony Cikity does not lend any support that Jeff did anything with the intent to cause the loss.

---

[7] See Exhibit 3 attached to Declaration of Jerome R. Bowen, Esq. - deposition transcript of Jeff Hart.

[8] Id.

Page 18 of 28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

Simply, the Defendant has not supplied the Court with any testimony to support Defendant's allegation that the injury was intentional, on the part of Jeff Hart, and/or that the "loss" was intended. Further, there was no "intent," as defined in Mallin, because there was no design or desire to cause the consequences (i.e. the injury to Plaintiffs) and there was no belief that the injuries to Plaintiffs were substantially certain as a result of Jeff Hart's acts. Therefore, there was no intent as it is defined under Nevada law  and, as there was no intent, his conduct cannot be "willful and malicious," pursuant to McCurdy. However, Jeff Hart is still liable for his inclusion in and presence with the 311 Boyz or the individuals that caused the injuries to Plaintiffs.

Brett Hart, father of Jeff Hart was deposed on May 16, 2006 and testified as follows:[9]

Q.     Do you believe your boy did anything wrong on July 18th, 2003:
THE WITNESS:     I don't believe he did.
Q.     (By Mr. Bowen) What did he tell you happened?
A.     He said he showed up to that party, he was, as he was walking up the car was pulling out and hit his friend as he got there and they were trying to stop the car.
***
Q.     Did he chase down the vehicle with his car?
A.     No.
**Q.     Did he tell you why he jumped the wall?**
**A.     They were trying to stop the car.**
**Q.     What did he tell you he did trying to stop the car?**
**A.     He was out in the road.**
**Q.     Doing what?**
**A.     Waving his arms.**
**Q.     That's what he told you?**
**A.     Yes.**
**Q.     Did he pick up a rock?**
**A.     Nope.**
**Q.     Did you hear that he picked up a rock?**
**A.     Yes, I've heard that.**
**Q.     Did you ask him if he picked up a rock after you heard that?**
**A.     Yes.**

---

[9] See Exhibit 2 attached to Declaration of Jerome R. Bowen, Esq. - deposition transcript of Brett Hart.

Page 19 of  28

Q.    **What did he tell you?**
A.    **He said he picked them up and sat them back down.**[10]

Toni Cikity, girlfriend of Jeff Hart at the time of the incident in question, was also deposed on March 30, 2006, and testified as follows:[11]

Q.    You just can't testify as you sit here today who threw the rocks?
A.    No.

There has been no finding that Jeff Hart, and/or his parents, intended any particular result, such as the injuries at issue, or that Jeff's conduct was not accidental in relation to what evolved into a melee. Brett Hart's testimony demonstrates that Jeff Hart was attempting to stop the LeFevre vehicle, not attempting to injure the Plaintiffs, and that he was not one of the individuals who threw objects at the LeFevre vehicle. In other words, it was not intended to be a melee but evolved into a melee. In relation to Jeff Hart, that equates to the possibility that his involvement in conduct which he can be legally liable was not intended to be harmful when that ultimately harmful conduct was initiated by others. His conduct was negligent, which is clearly covered under the insurance policy at issue.

Defendant's position that the aforesaid causes of action do not involve "accidental" conduct misrepresents coverage in that this exclusion does not apply to intentional "acts." The allegedly "applicable" exclusion applies only to: bodily **injury** or property **damage** that is **intended**. Intentional conduct is not excluded unless any resulting injury was expected or intended. It also applies to injury or damage Jeff Hart Aguilar or his parents.

_____

[10] Id. at 16:11-17:24 (internal objection omitted)(emphasis added).

[11] See Exhibit 4 attached to Declaration of Jerome R. Bowen, Esq. - deposition transcript of Toni Cikity.

Page 20 of 28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191   FAX: 702-240-5797

Likewise, the injury or damage sustained was not the result of willful acts of Jeff Hart or his parents. The damages sustained were the result of such conduct on the part of others and for which Jeff Hart was liable because of his presence and participation in a group mentality. Jeff did not personally inflict the injuries sustained with willful and malicious conduct.  Jeff was part of a group mentality that resulted in others causing the damages, though Jeff Hart was a part of and made no attempt to stop or remove himself from the circumstances. Jeff's parents are vicariously liable for the known propensity of their son to engage and participate in the type of negligent conduct that led to the injuries involved. The Severability Condition of the applicable insurance policy, provides, "This insurance applies separately to each insured."

LIBERTY MUTUAL is attempting to mislead the court as to the application of this exclusion to intentional "acts" as opposed to intended injury. The case law cited as applying this exclusion relies on situations where intentional acts result in injuries that are the natural and probable result of the act. As shown herein, Hart did not do anything intentionally.  At a minimum, this creates a genuine issue of material fact as to the intentions and/or accidental conduct of Jeff Hart and/or the 311 Boyz in general.   Obviously, further discovery is required and/or necessitated.

///

2.      **The Negligence Claim is Proper As Jeff Hart's Conduct is Covered Under the Applicable Homeowner's Policy.**

As Jeff Hart's conduct constituted an "occurrence" under the applicable policy language, the claim for negligent supervision on the part of insureds, Brett and Rita Hart, is proper.

3.      **Defendant's Argument That Because There Was No Coverage As a Matter Of Law As to The 2nd Amended Complaint, There Can Be No Bad Faith, Is Without Merit.**

Again, State Farm distorts the facts to justify its position. LIBERTY MUTUAL had a duty,

Page 21 of  28

at a minimum, to fully defend and/or fully indemnify the Harts, including Jeff Hart. In United National Ins. Co. v. Frontier Ins. Co., Inc., 120 Nev. 678, 99 P.3d 1153, the Nevada Supreme Court stated,

> We have previously held that **"[a]n insurance policy is a contract of adhesion."** **Accordingly, the language of an insurance policy is broadly interpreted in order to afford "the greatest possible coverage to the insured." An insurance policy may restrict coverage only if the policy's language "clearly and distinctly communicates to the insured the nature of the limitation." It follows that "any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured.** However, we have also stated that the language of an insurance policy will be given its plain and ordinary meaning "from the viewpoint of one not trained in law," meaning, we "will not rewrite contract provisions that are otherwise unambiguous ... [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted.

Id at 684, 99 P.3d at 1156 (internal citations omitted).

Insurance Companies owe a duty to defend to their insureds. Id. Specifically, United National holds that,

> **"[a]n insurer ... bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." Once the duty to defend arises, "this duty continues throughout the course of the litigation." If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured.** The purpose behind construing the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a defense for an insured without at least investigating the facts behind a complaint.

Id. at 687, 99 P.3d at 1158 (emphasis added). Other jurisdictions also define the duty to defend in a similar manner. For example, the third circuit states that "[t]he duty to defend arises whenever an underlying complaint may "potentially" come within the insurance coverage." See Brotherhood Mutual Insurance Co. V. Lancaster Conference of the Menonite Church, 2011 WL 2134666 (E.D.Pa.))(citing Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)).

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

1    There was always a duty to defend, as discussed above, in relation to the coverage positions

2    taken by LIBERTY MUTUAL. At a minimum there was a potential for coverage for both Jeff Hart

3    and his parents, given the allegation of negligence and the garnered evidence from the discovery

4    obtained in the underlying "311 Boyz" action as referenced above herein.  This is the case especially

5    if there is a potential for coverage. At that point, LIBERTY MUTUAL had a duty to fully defend

6    and indemnify. Therefore, there was a duty to defend and indemnify as to the Harts.

7    

8    As previously stated, not only has Defendant LIBERTY MUTUAL waive its right to deny

9    coverage under the Homeowners's Policy, but Jeff Hart's conduct falls under an "occurrence" and,

10    therefore, coverage was available for the events of July 18, 2003. LIBERTY MUTUAL's refusal to

11    defend and/or indemnify the Harts was unreasonable, improper, and constituted bad faith.

12    **4.    Plaintiffs' Claims for Violation of the Nevada Unfair Claims Practices Act is Not Barred by the Statute of Limitations.**

13    The general rule concerning statutes of limitation is that a cause of action accrues when the

14    

15    wrong occurs and a party sustains injuries for which relief could be sought. See Bemis v. Estate of

16    Bemis, 114 Nev. 1021, 1024, 967 P.2d 437, 440 (1998). An exception to the general rule has been

17    recognized by the Nevada Supreme Court and many others in the form of the so-called "discovery

18    rule." Id. Under the discovery rule, the statutory period of limitations is tolled until the injured party

19    discovers or reasonably should have discovered all facts supporting a cause of action. Id. The

20    rationale behind the discovery rule is that the policies served by statutes of limitation do not

21    outweigh the equities reflected in the proposition that plaintiffs should not be foreclosed from

22    judicial remedies before they know that they have been injured and can discover the cause of their

23    injuries. Id. (citing Petersen v. Bruen, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990)) (emphasis added).

24    In a discovery based cause of action, a plaintiff must use due diligence in determining the

25    

26    Page 23 of  28

**BOWEN LAW OFFICES**
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

existence of a cause of action. See Sierra Pacific Power Co. v. Nye, 80 Nev. 88, 389 P.2d 387

(1964). **Whether plaintiffs exercised reasonable diligence in discovering their causes of action**

**"is a question of fact to be determined by the jury or trial court after a full hearing."** See

Millspaugh v. Millspaugh, 96 Nev. 446, 448, 611 P.2d 201, 203 (1980). Dismissal on statute of

limitations grounds is only appropriate " 'when uncontroverted evidence irrefutably demonstrates

plaintiff discovered or should have discovered' " the facts giving rise to the cause of action. See

Bemis at 1025(citing Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th

Cir.1992))(quoting Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th

Cir.1984))(emphasis added).

Importantly, "**[w]hen the plaintiff knew or in the exercise of proper diligence should**

**have known of the facts constituting the elements of his cause of action is a question of fact for**

**the trier of fact.**" See Oak Grove Investors v. Bell & Gossett Co., 99 Nev. 616, 623, 668 P.2d 1075,

1079 (1983). For example, "an action for legal malpractice does not accrue until the plaintiff

discovers, or should have discovered, all facts material to the elements of the cause of action,

including the sustaining of damages. The rationale for the rule is that a client has the right to rely

on the attorney's expertise…" Id. at 622, 668 P.2d 1078-79. Therefore, summary judgment based

upon the running of the statute of limitations is a premature argument that must be reserved for the

trier of fact at trial.

Here, Plaintiffs' claim for violation of the Nevada Unfair Claims Practices Act (NRS

686A.310), for example, is not barred by the statute of limitations of 3 years. Nevada courts have

been clear that the issue of when the Plaintiffs "knew or should have known" all elements of their

causes of action, triggering the running of the statute of limitations, is a question of fact for the trier

Page 24 of  28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

of fact at trial (i.e. the jury). Obviously, the claims were the Harts to assign.  Thus, the question is when were the damages sustained by the Harts.  It could not have been before they were forced to undertake a Settlement Agreement, Stipulated Judgment and and an Assignment.

However, even if the Court holds that it is a question of law to be determined at this time, which Plaintiffs vehemently argue is premature, the general rule regarding statutes of limitation is that a cause of action accrues **when the wrong occurs _and_ a party sustains injuries for which relief could be sought**. Thus, the Harts were not injured until the time when they faced financial ruin and were forced to sign the operative stipulated judgment and assignment in December of 2009. The Complaint for bad faith against LIBERTY MUTUAL was filed well before the applicable statute of limitations would have run.

Additionally, the handling and/or denial of the Hart's claim was not thorough, timely, or forthright. Specifically, in <u>Quinn v. 311 Boyz</u>, Case No. A483778,[12] Plaintiffs' counsel in the instant case spoke with defense counsel provided to the Harts in the <u>Quinn</u> matter and defense counsel stated that the matter had settled and Liberty Mutual had paid monies. The November 18, 2005 Minute Order in <u>Quinn</u> notes that the case was resolved and trial date vacated.[13] On June 29, 2006, judgment was granted in addition to fees and costs.[14]

Thus, not only have Plaintiffs been notified by counsel in another matter that Liberty Mutual paid a demand in another, similar "311 Boyz" incident but Plaintiffs simply do not have enough information at this time to properly oppose the Motion for Summary Judgment as to this issue. In

---

[12] <u>See</u> Exhibit 1 of Plaintiffs' Request for Judicial Notice.

[13] <u>See</u> Exhibit 2 of Plaintiffs' Request for Judicial Notice.

[14] <u>See</u> Exhibit 3 of Plaintiffs' Request for Judicial Notice.

the instant case, Plaintiffs Noticed the Custodian of Records Deposition for Barron & Pruitt, LLP and/or Jason Wigg, Esq., defense counsel for Jeff Hart in the Quinn matter.[15] Plaintiffs also provided a Subpoena Duces Tecum regarding the same.[16] However, Barron & Pruitt, LLP tendered a written objection to said subpoena per NRCP 45(c)(2)(B) and FRCP 45(c)(2)(B), and stated that they would not be producing "any privileged or confidential documents or communications/materials" without an order compelling them to do so.[17] Additionally, Plaintiffs' counsel has sent correspondence to the Harts requesting that they sign a Waiver of Attorney-Client Privilege and Consent to Release File in order to permit the Plaintiffs to obtain said files.[18] However, to date, the Harts have not complied with this request. As set forth above herein and in the Declaration of Jerome R. Bowen, files from another matter are being sought, which will be the subject of a motion before this Court.

However, given that additional discovery must be conducted on this matter (i.e. obtaining the files of personal counsel and coverage counsel in the underlying 311 Boyz case, obtaining files of personal counsel and coverage counsel in other cases involving Jeff Hart in which Liberty Mutual paid monies, obtaining the cooperation of the Harts, etc.), Plaintiffs request F.R.C.P. 56(f) relief, wherein the Court has authority to give the party opposing a motion for summary judgment a continuance when discovery is not complete and additional evidence is needed. **Notably, it has been held that it is an abuse of discretion to deny a request for a continuance** to conduct additional discovery in order to compile facts in opposition to a motion for summary judgment.

---

[15] See Exhibit 5 attached to Declaration of Jerome R. Bowen, Esq..

[16] See Exhibit 6 attached to Declaration of Jerome R. Bowen, Esq.

[17] See Exhibit 7 attached to Declaration of Jerome R. Bowen, Esq.

[18] See Exhibit 8 attached to Declaration of Jerome R. Bowen, Esq.

Page 26 of 28

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

BOWEN LAW OFFICES
Conquistador Plaza
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
702-240-5191  FAX: 702-240-5797

Halimi v. Blacketor, 105 Nev. 105, 770 P.2d 531 (1989).

   5.    **Plaintiffs Can Demonstrate that Liberty Mutual Was Guilty of Oppression, Fraud, Or Malice.**

   Once again, Plaintiffs assert that LIBERTY MUTUAL had a duty to defend and/or indemnify the Harts, pursuant to Nevada law, which was more thoroughly outlined above. Failing to do so, when defense and/or indemnification was appropriate constitutes oppression, fraud, and/or malice on the part of LIBERTY MUTUAL. As with Plaintiffs' Unfair Claims Practices Act claim, Plaintiffs request F.R.C.P. 56(f) relief as to the issue of punitive damages.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

Page 27 of 28

IV.

CONCLUSION

Based on the foregoing, the Plaintiffs respectfully request that this Court deny Defendants'

Motion for Summary Judgment.

DATED this 22nd day of February, 2012

BOWEN LAW OFFICES

Jerome R. Bowen, Esq.
Nevada Bar No. 004540
BOWEN LAW OFFICES
9960 W. Cheyenne Ave., Suite 250
Las Vegas, Nevada 89129
Attorneys for Plaintiffs