# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STEPHEN TANNER HANSEN, individually; CLARK LEFEVRE, individually, and as parent of CRAIG LEFEVRE, <br><br> Plaintiffs, <br> vs. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, a foreign corporation; C.R. CHANDLER; DOES 1 through 10; and ROE CORPORATIONS 1-10. <br><br> Defendants. | Case No. 2:11-cv-01519-GMN-CWH <br><br> **ORDER** |

Pending before the Court is the Motion for Summary Judgment (ECF No. 11) filed January 24, 2012 by Defendant Liberty Mutual Fire Insurance Company ("Defendant"). Plaintiffs Stephen Tanner Hansen and Clark Lefevre (collectively, "Plaintiffs") filed a Response in Opposition (ECF No. 16) on February 22, 2012 and Defendant filed a Reply (ECF No. 19) on March 12, 2012.  This is an insurance bad faith case arising from Defendant's denial of benefits under the Harts' homeowner's insurance policy for injury resulting from the allegedly intentional acts of the son of the insured, Jeff Hart.  Plaintiffs' complaint recites claims for breach of contract, contractual and tortious breach of the implied covenant of good faith and fair dealing, and violations of the Nevada Unfair Claims Practices Act and seeks declaratory relief and damages.  By this motion, Defendant seeks the Court's determination that it was not obligated to provide coverage for a civil suit arising from the intentional acts of an insured. Because there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law, Defendant's Motion is GRANTED.

## I. BACKGROUND

This case arises out of the violent events of July 18, 2003. Plaintiff Stephen Hansen together with Craig Lefevre, son of Plaintiff Clark Lefevre, and Joseph Grill attended a party at 9201 Canyon Mesa Drive, in a gated community within Las Vegas, Nevada. (ECF No. 1-1, ¶ 6.) Also in attendance at the party were members of a teen gang known as the "311 Boyz." Jeff Hart, the son of the homeowner's insurance policy holder, was a member of this gang. (*Id.* at ¶¶ 8-9.) Hansen, Lefevre, and Grill felt uncomfortable and attempted to leave. (*Id.* at ¶ 7.) However, the group was prevented from leaving by the 311 Boyz, who stood behind and sat on Lefevre's vehicle. (*Id.* at ¶ 8.) An altercation ensued and Lefevre was hit several times in the face and upper torso. (*Id.* at ¶ 9.) Hansen, Lefevre, and Grill managed to extricate themselves, back up the vehicle, and speed out of the cul-de-sac, which held a large crowd of partygoers. (*Id.*) While driving out, the 311 Boyz hit the vehicle with fists, feet, and bottles. (*Id.*)

Members of the 311 Boyz pursued the vehicle as it drove away and one of the members, in another vehicle, rammed the back of Lefevre's vehicle as it waited to exit the security gate. (*Id.* at ¶ 10.) Upon being rammed from behind, Lefevre drove his vehicle through the unopened gate, turned right onto the main road, which ran parallel to Canyon Mesa Drive, and doubled back toward the location of the party. (*Id.* at ¶ 10.) When the vehicle reached the portion of the parallel main road which was directly across from 9201 Canyon Mesa Drive, Jeff Hart and other members of the 311 Boyz who had not given chase intercepted the vehicle which was now on the main road and assailed it with rocks, beer bottles, and beer cans. (*Id.* at ¶ 11.) These objects smashed the windows and windshield, dented the vehicle, and injured the occupants. (*Id.* at ¶ 12.) At some point, a large rock came through the windshield and struck Plaintiff Hansen in the left arm and face. (*Id.* at ¶ 13.) As a result, Hansen was severely and permanently injured. (*Id.* at ¶¶ 13, 16.)

Members of the 311 Boyz involved in the attack were criminally prosecuted and Hart

accepted an *Alford* plea to battery with substantial bodily harm. (ECF No. 11-2.) In addition to the criminal action, the Plaintiffs in the instant action brought a civil suit against Hart, the other attackers, and their respective parents. (ECF No. 1-1, ¶¶ 3, 18.)

On the date of the attack, Hart and his parents were insured under a homeowner's policy from Defendant, which provided $300,000 in coverage for claims of personal liability and to cover the cost of defense counsel in the event of a civil suit. (*Id.* at ¶ 17.) The pertinent parts of that policy provide:

> **Coverage E – Personal Liability**
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable . . .; and
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent.
>
> **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":
>     **a.** Which is expected or intended by one or more "insured" .
>       . . .

(ECF No. 11-5, at 11.)

After learning of the civil suit, the Harts informed Defendant about the suit. Defendant then began investigating whether the suit was covered by the Harts' policy and filed for and obtained an extension for the answer to the complaint. (ECF No. 11, at 5.) At the conclusion of the investigation, Defendant sent a letter to the Harts informing them that Defendant would not provide liability coverage or defense counsel "[b]ecause the complaint allege[d] no damages to which [the] policy would apply." (ECF No. 11-9.)

On December 22, 2009, judgment was entered against the Harts on the civil suit and, in a subsequent settlement agreement, the Harts assigned all potential claims that they had against

Defendant to Plaintiffs. (ECF No. 1-1, ¶ 19.) Plaintiffs then brought this action against all Defendants on January 12, 2011, alleging four causes of action: (1) breach of contract, (2) contractual and/or tortious breach of implied covenant of good faith and fair dealing, (3) violation of Nevada Unfair Claims Practices Act, and (4) declaratory relief. (*Id.*) Defendant Liberty Mutual removed to federal court, and, subsequently, filed this Motion for Summary Judgment seeking the Court's determination that the actions of Jeff Hart were intentional and thus not covered by the Harts' policy. Viewing the facts in the light most favorable to Plaintiffs, the Court agrees with Defendant and because no genuine issue of material fact remains on any of Plaintiffs' claims, the Court GRANTS the Motion for Summary Judgment.

## II.  **LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of

material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

### III. DISCUSSION

Defendant argues that there are no issues of material fact and it is entitled to judgment as a matter of law because Jeff Hart's actions were intentional and not covered by the insurance policy. Thus, Plaintiffs cannot show that there was a breach of contract, bad faith on behalf of Defendant in denying the claims, a violation of the Nevada Unfair Claims Practices act, or that Plaintiffs, on the Harts' behalf, are entitled to any payment. Plaintiffs assert various arguments that genuine issues of material fact do exist and summary judgment is not proper. The Court will first analyze the breach of contract claim as it subsumes most of the parties' arguments. Then the Court will examine the other claims in light of the Court's holding on the breach of contract claim. Finally, the Court will address Plaintiffs' argument that the motion should be

deferred because further discovery is needed.

### A. Breach of Contract

Defendant asserts that the denial of coverage cannot be a breach of contract because the actions of Jeff Hart were intentional and not covered by the insurance policy. Consequently, Plaintiffs cannot show the necessary elements of breach of contract and Defendant is entitled to judgment as a matter of law. Plaintiffs argue that genuine issues of material fact exist as to the intentional nature of Hart's actions and whether Defendant's prior conduct waived its right to deny coverage under the policy. Because the Court finds that the actions were intentional and that the issues raised by Plaintiffs do not affect the outcome of the case under Nevada Law, there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.

Two provisions of the Hart's insurance policy limit coverage when the suit is based on an insured's intentional actions. The first provision limits the scope of personal liability coverage to "suit[s] [ ] brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." (ECF No. 11-5.) "Occurrence" is defined within the contract as an "accident" resulting in bodily harm or property damage. (*Id.*) Second, the contract specifically excludes personal liability and payment for others' medical expenses where the bodily injury or property damage was "expected or intended by one or more insured." (*Id.*)

These provisions are typical of homeowners' insurance policies in Nevada and Nevada courts have had ample opportunity to construe them. *See e.g., Beckwith v. State Farm Fire and Casualty Co.*, 83 P.3d 275, 277 (Nev. 2004). In doing so, Nevada courts have combined these "occurrence" and "expected or intended" provisions into one analysis by defining "accident"—and thereby "occurrence"—as "a happening that is not expected, foreseen, or intended." *See id.* at 276. Thus, under Nevada case law, insurance companies are obligated to provide coverage only when the happening—the circumstances giving rise to injury—is unexpected, unforeseen,

and unintended. *See id.*

Consequently, even when the ultimate resultant harm is not necessarily intended, injuries do not qualify for coverage when the circumstances giving rise to the injury are created intentionally. *See e.g., id.* at 277, *but see Allstate Ins. Co. v. Sanders*, 495 F.Supp.2d 1104, 1107-08 (D.Nev. 2007) (holding that the intent to throw an object was not sufficient to result in a non-accident, but that there must be some expectation of contact).  By that same logic, negligence claims "ar[ising] out of intentional . . . actions" are also excluded from coverage. *Allstate Ins. Co. v. Bruttig*, No. 2:05-cv-1257-RCJ-PAL, 2006 WL 3248393, at *4 (D. Nev. Nov. 3, 2006). This principal also extends to negligent supervision claims against parents of the intentional actor. *See e.g., Fire Ins. Exchange v. Cornell*, 90 P.3d 978, 979-80 (Nev. 2004).  Therefore, the focus of the analysis is not whether the claim is properly an intentional tort or one for negligence, but rather, whether the incident underlying all claims was unexpected, unforeseen, and unintended.

Here, the actions of Jeff Hart were intentional, and thus, outside the scope of the insurance policy.  Hart, along with the 311 Boyz, assaulted an occupied vehicle intentionally creating circumstances that resulted in bodily injury.  Hart need not have intended to injure or intended the extent of injury suffered because the underlying conduct causing the injury, throwing rocks, bottles, and cans at the vehicle, was not an accident.  Such activity can be expected to cause injury and the resulting injury was a foreseeable consequence.  Further, even though the complaint against the Harts alleged negligence and negligent supervision claims, those claims were based on the underlying intentional action of throwing rocks and other objects at the vehicle.  Ultimately, an assault of this nature cannot be construed as an accidental occurrence.

Accordingly, the Court finds that the Movant-Defendant has met its burden, and the burden shifts to the Plaintiffs to show that there are genuine issues of material fact.  Plaintiffs

argue that there are two. First, Plaintiffs argue that there is a genuine issue of material fact as to whether Hart actually threw a rock, or alternatively, if he threw a rock, whether he intended to harm the vehicle's occupants. Second, Plaintiffs argue that genuine issues of material fact exist regarding the issue of whether Defendant's act of providing coverage for Hart's personal liability related to another incident involving the 311 Boyz acted as a waiver for future denials. The Court will address each argument in turn.

Plaintiffs' first argument that Hart did not throw rocks at the vehicle does not meet their burden because the issues raised are neither genuine nor material. As evidence that Hart did not throw a rock, Plaintiffs present the deposition testimonies of Hart's father, (ECF No. 17-1, Ex. 2), and Hart's girlfriend, (ECF No. 17-2, Ex. 4). However, neither testimony shows a genuine issue of material fact. Hart's father testified that, in a conversation with his son, Hart said he did not throw a rock. This statement is inadmissible hearsay, and the Court may not consider it in its determination on this motion. Thus, the only evidence the Court may consider is the testimony of Hart's girlfriend, which simply states that she could not testify who threw the rocks.

In contrast, Defendant submits the deposition testimonies of Chris Farley, (ECF No. 19-2), and Brandon Gallion (ECF No. 19-3) who both testified that they observed Jeff Hart throwing rocks.[1] Although the testimonies of Farley and Gallion, both co-assailants with Hart, are potentially biased, the Defendants have presented admissible evidence where the Plaintiff has not. Plaintiffs' evidence is insufficient to provide an evidentiary basis upon which a reasonable fact-finder could find for them, and the issue raised is not genuine.

Furthermore, whether or not Hart threw the specific rock(s) that caused injury is irrelevant. The claims asserted against the Harts were based on the injury which occurred as a

---

[1] Additionally, Defendants argue that Jeff Hart's criminal plea evidences that he threw the rock. However, the plea is inadmissible. Under Nevada Law, an *Alford* plea is considered a nolo contendere plea. *State v. Gomez*, 930 P.2d 701, 705 (Nev. 1996). Nolo contendere pleas are inadmissible. FRE 410(a)(2).

result of the assault by the 311 Boyz gang. Neither the attack on the vehicle by the gang, nor Jeff Hart's presence and participation in that attack—whether he threw a rock or not[2]—was accidental. The injury arose from an intentional assault. Thus, whatever specific role Hart may have played is irrelevant to the analysis of whether or not the conduct, the assault causing the injury underlying the claim arose out of an accident. Thus, the issue raised regarding whether Hart threw rocks at the vehicle, is not material.

Alternatively, Plaintiffs argue that if Hart threw rocks at the vehicle, his intent—whether he intended to injure or simply to scare the occupants and damage property—is a question of material fact. As explained above, this question is of no legal significance. Intent to cause a specific injury is not necessary to show an intentional act for the purpose of disqualifying insurance coverage.

Plaintiff's reliance on *Nabozny v. Burkhardt*, 606 N.W.2d 639 (Mich. 2000) for the opposite proposition is fundamentally flawed. Plaintiffs' cited case is Michigan law and not binding on this Nevada suit. Given the Nevada law directly and contradictorily on point, the case also lacks any persuasive authority. Perhaps more importantly, the language upon which Plaintiffs rely is actually the Michigan Supreme Court's summary of the holding of the lower court which it ultimately reversed. *Id.* at 482. The actual holding of that decision was that the "injury reasonably should have been expected. Therefore, it is irrelevant that the [injury] was not the specific harm intended by the insured." *Id.* at 481-82. Incidentally, the *Nabozny* Court's *actual* holding is congruent with Nevada case law; even under Plaintiffs own erroneously cited law, the question of Hart's intent to injure is irrelevant.

Plaintiffs' second argument that Defendant waived its right to deny coverage also fails to meet Plaintiff's burden because the issue is not genuine. Plaintiffs allege that Defendant

---

[2] Plaintiffs have not asserted that Hart was either an innocent bystander or somehow caught in the wrong place at the wrong time.

provided Hart with personal liability coverage and a defense for a suit arising from a separate incident involving the 311 Boyz. Plaintiffs argue that this constitutes a waiver of the policy's intentional act limitations. However, even assuming this to be true, Plaintiffs have not provided any evidence that Defendant in fact provided coverage for the prior suit, or that the separate incident involved an intentional act. Without specific evidence, the Plaintiffs cannot show that a dispute exists beyond some speculative conjectural doubt and the issue is not genuine.

Therefore, there are no genuine issues of material fact regarding Plaintiffs' breach of contract claim. Hart's actions and the action of the gang of boys were intentional and thus not covered by the policy. Defendant's actions do not constitute a breach and it is entitled to judgment as a matter of law.

**B.     Other Claims**

Plaintiffs other alleged causes of actions are somewhat ancillary to the breach of contract claim and are all subsequently affected by the Court's determination that there was no breach of contract. However, because some claims could survive independently, the Court analyzes each separately.

*1.     Contractual and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing*

"Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract." *A.C. Shaw Construction v. Washoe County*, 784 P.2d 9, 10 (Nev. 1989). In the context of insurance contracts, when an insurer fails to act in good faith by refusing "without proper cause" to compensate an insured for a loss covered by the policy, this failure gives rise to actions both in contract, *see Pemberton v. Farmers Ins. Exchange*, 858 P.2d 380, 382 (Nev. 1993), and in tort, *see U.S. Fidelity & Guaranty Co. v. Peterson*, 540 P.2d 1070 (Nev. 1975). Here, however, Defendants did not act in bad faith because it had proper cause to refuse compensation. Hart's actions were intentional and thus outside the policy's coverage.

Thus, the Court finds that there is no genuine issue of material fact as to Defendant's bad faith and judgment is warranted as a matter of law.

### 2. *Nevada Unfair Claims Practices Act*

Plaintiffs also allege that Defendant violated several provisions of the Nevada Unfair Claims Practices Act.[3] However, other than their general allegations and recitation of the statutory requirements, Plaintiffs have provided no evidence supporting these assertions. Contrarily, many of the facts on the record show that Defendant acted promptly on communications, reasonably investigated, denied coverage timely, and provided Plaintiffs with an explanation of the denial in compliance with their obligations under the Nevada Unfair Claims Practices Act. The other alleged violations cite provisions only applicable where coverage is required. Thus, there are no issues of genuine, material fact and Defendant is entitled to judgment as a matter of law on the Nevada Unfair Claims Practices Act claims.

### 3. *Declaratory Relief*

Because Plaintiffs have not established that the Harts were entitled to judgment against Defendant, Plaintiffs have no right to collect any damages as assignees of the Harts' claims. Thus, Defendant is entitled to judgment as a matter of law.

### C. **Continuance**

Finally, Plaintiffs argue that summary judgment is inappropriate at this time because

---

[3] Specifically, Plaintiffs assert Defendants failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, NRS 686A.310(1)(b), failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies, NRS 686A.310(1)(c), failed to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured, NRS 686A.310(1)(d), failed to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear, NRS 686A.310(1)(e), compelled insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered, NRS 686A.310(1)(f), failed to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage, NRS 686A.310(1)(l), and failed to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim, NRS 686A.310(1)(n).

1  Plaintiffs have not had adequate time to complete discovery to provide the Court with the
2  evidence needed to oppose the Motion.  Discovery began before removal to this Court, but it is
3  still open due to stipulated agreements of the parties.  Plaintiffs now move for deferred
4  consideration on the Motion under Fed. R. Civ. P. 56(d).

5       Under Fed. R. Civ. P. 56(d) the court may defer a motion "if a nonmovant shows by
6  affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its
7  opposition."  In doing so, the nonmovant must identify "specific facts that further discovery
8  would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City*
9  *and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (citing Fed. R. Civ. P. 56(f)[4];
10 *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

11      Plaintiffs have asserted that further discovery would reveal specific facts related to the
12 insurance agent who sold the insurance policy to the Harts (her qualifications and certifications),
13 as well as facts related to Defendant's alleged coverage for Jeff Hart's personal liability in a
14 separate suit arising from his association with the 311 Boyz.  Plaintiffs disregard the facts that
15 the state court granted judgment for the insurance agent on the pleadings, and that the requested
16 attorneys' files relating to the other 311 Boyz suit are likely privileged.  However, setting those
17 facts aside, Plaintiffs' laundry list of discovery requests fail to articulate what specific facts they
18 believe further discovery would reveal, or to explain how the evidence obtained pursuant to
19 those discovery requests could possibly preclude summary judgment.  As such, the assertion that
20 more discovery is needed appears to be a request for a fishing expedition to drum up other
21 cognizable claims.  Plaintiffs have not met the requirements under Fed. R. Civ. P. 56(d) for the
22 claims presented and their request for deferral is denied.

23      Accordingly, no genuine issues of fact exist, and Defendant is entitled to judgment as a
24 matter of law on all claims.  The Court grants Defendant's Motion for Summary Judgment.

25

---

[4] FRCP 56(f) was a similar provision under a previous version of the rules.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

The Clerk shall enter judgment accordingly.

DATED this 30th day of September, 2012.

_____
Gloria M. Navarro
United States District Judge